Caguas Company, Inc., Plaintiff and Appellee, v. Alejandro López Fauct, Defendant and Appellant.

No. 8133. Argued May 9, 1941.—Decided July 23, 1941.

*Mimoso, Vendrell & Mimoso,* and *Rafael Soltero Peralta* for appellant. *Fiddler, McConnell & González,* and *Ema Luz Cardona* for appellee.

MR. JUSTICE TODD, JR., delivered the opinion of the court.

Caguas Company, Inc., a corporation organized under the laws of Maryland, brought, in the District Court of San Juan, an action against Alejandro López Fauct for the collection of a promissory note for $26,482.11, executed by the defendant on December 10, 1931, payable to the order of the United Porto Rican Bank, to mature on June 30, 1932, with interest after maturity at the rate of 9 per cent per annum. The amount of said note became reduced to $24,034.33 by virtue of partial payments thereon. In the complaint it was alleged that The United Porto Rican Bank indorsed and delivered the instrument to The National City Bank of New York, which indorsed and delivered it to the East Porto Rican Sugar Company which, in its turn, indorsed and delivered it to the plaintiff, the present holder thereof. Said note has not been paid by the defendant. On the latter's motion the case was transferred to the District Court of Humacao.

The defendant in his answer substantially denied the facts alleged in the complaint, and as special defenses he alleged in short, as follows:

"1. That the plaintiff is not entitled to do business in Puerto Rico.

"2. That the promissory note is one of several notes secured by crop liens in accordance with the terms of a contract executed by the defendant and The United Porto Rican Bank covering the sugar crops of 1932 to 1935, and, as it does not appear that the crop-loan contract has been assigned to the plaintiff, the latter is not entitled to enforce the payment of the promissory note.

"3. That the defendant was unable to pay the note owing to the loss suffered by him of the cane crops securing the crop loan and planted by him on land leased to him by The United Porto Rican Sugar Company (of Porto Rico), of which corporation The United Porto Rican Bank is alleged to be a subsidiary, which loss was due to the fact that the former corporation being insolvent its receiver rescinded the lease and the defendant had to abandon his crops and The United Porto Rican Bank then discontinued its payments on the crop-loan contract already referred to."

After the corresponding trial had been held, the lower court gave judgment for the plaintiff. The defendant has appealed from that judgment, and he urges that the lower court committed seven errors, to wit: (1) in construing Section 401 of the Code of Commerce; (2) in construing Sections 37 and 38 of the Law of Private Corporations; (3) in construing Section 410 of the Code of Commerce; (4) in construing Section 405 of the Code of Commerce; (5) in weighing the evidence; (6) in weighing the evidence to the prejudice of appellant's rights; and (7) in adjudging the defendant to pay the costs, disbursements, and attorney's fees.

We will take up first the second error assigned, that is, the one dealing with the construction of Sections 37 and 38 of the Law of Private Corporations of March 9, 1911, by virtue of which the first defense of the defendant to the effect that the plaintiff was without capacity to bring the present suit was dismissed. This same question was raised and determined in favor of the plaintiff in the recent case of *Caguas Company, Inc.* v. *Mombille,* 58 P.R.R. 301. Just as in the cited case, it was shown in the case at bar that the business of the plaintiff consisted in buying, among others, the promissory note sued on herein and that the deal in ques-

tion, according to the testimony of Isidro Quiñones, an employee of the plaintiff and a witness for defendant himself, was made in the United States. On page 116 of the transcript of the evidence said witness appears testifying as follows:

"When did the Caguas Company, Inc., assume the loans or the liability for the payment of such loans made by the National City Bank to the United Porto Rican Bank?

"A.—I do not exactly know when it assumed it, *because such deals were usually made in the North.*" (Italics ours.)

There is no evidence tending to show that the plaintiff had made contracts in Puerto Rico, and it was admitted that the plaintiff had not complied with the legal formalities required by Sections 37 and 38 of the Law of Private Corporations to entitle it to do business in Puerto Rico; but it has already been decided in *Caguas Company, Inc.* v. *Mombille, supra,* ratifying a former holding of this court, to quote from the syllabus, that—

"A foreign corporation which does not do business in the Island, has capacity to sue in our courts for the collection of promissory notes of which it is the holder. Its mere holding of the promissory notes, of itself, does not mean that it does business here in the sense of being bound to comply with the obligation imposed by Section 38 of the Private Corporations Act of 1911, as amended by Act No. 31 of 1916, page 82, as a condition precedent to its right to sue."

The error is nonexistent.

■■ Section 401 of the Code of Commerce, which, in the first assignment is said to have been erroneously construed by the lower court, is similar to Section 49 of the Uniform Negotiable Instruments Act of 1930 (Act No. 17, Session Laws of 1930, p. 172), which reads as follows:

"The holder may at any time strike out any indorsement which is not necessary to his title. The indorser whose indorsement is struck out, and all indorsers subsequent to him, are hereby relieved from liability on the instrument."

The promissory note sued on in this case was indorsed by several entities which at different times were the holders thereof. It appears, however, that the first indorsement, made by M. B. Mamwaring, comptroller of The United Porto Rican Bank, was a blank indorsement, that is, no indorsee whatever was mentioned and, therefore, was payable to bearer and negotiable by delivery. (Section 387 of the Code of Commerce, Section 35 of Act No. 17 of 1930.)

It having been shown that the plaintiff was the holder of said note, the lower court held, under section 401, *supra,* that it was unnecessary to discuss or to take into consideration, although their regularity had been shown, the indorsements subsequent to the first one made in blank. The appellant maintains that the error consists in that the provision in said section to the effect that the holder of an instrument may "strike out" any indorsement which is not necessary to his title requires that such striking out shall be done "actually" on the instrument by drawing a line across any indorsements subsequent to the one in blank, which was not done in the instant case. We do not think that the aforesaid provision should be construed so technically.

In *Parker* v. *Roberts,* 243 Mass. 174, 137 N. E. 295, a similar situation arose. A note payable to order was executed and the payee indorsed the same in blank before its maturity. Subsequently the instrument was twice indorsed, both being special indorsements. The last one of them was canceled by a rubber stamp but not so the first special indorsement to the Corn Exchange National Bank. There was no evidence to show how the plaintiff had become the holder of the note, but the Supreme Court of Massachusetts in applying Section 49 of the Uniform Negotiable Instruments Act (section 401, *supra*), held as follows:

"The right of the plaintiff to omit tracing his title . . . through all subsequent indorsers, and to allege that he is the holder under the previous blank indorsement is conferred by the statute. (Citations.)

The note therefore would be transferable by delivery and in effect a note payable to bearer.''

This was so held, notwithstanding that in the opinion it appeared *prima facie* from the note that title thereto remained in the first special indorser, the Corn Exchange National Bank, because, as stated by the court, ''the holder of a note which has been indorsed in blank is presumed to be a *bona fide* holder.''

In the case at bar, as the plaintiff proved that The United Porto Rican Bank indorsed in blank the note executed by the defendant and that it was the holder thereof, it was entitled to claim the amount of the same, thus striking out in fact, although not physically on the instrument, the subsequent special indorsements. What section 401, *supra,* does is to make it unnecessary to trace back· the chain of title through the several special indorsements, and to enable the *bona fide* holder of the note to establish his title thereto on the basis of the blank indorsement. To require the actual crossing out of every subsequent indorsement would result in attaching more importance to the form than to the substance of the right granted by law. Besides, we must not forget that the effect of the section which we are construing is to relieve subsequent indorsers from liability upon the note without affecting at all any liability on the part of the defendant as the maker of the note.

In the third and fourth assignments it is urged that the lower court erred in construing Sections 410 and 405 of the Code of Commerce, which provide as follows:

''Section 410.—(Section 58, Act No. 17 of 1930, p. 172)—A holder in due course holds the instrument free from any defect of title of prior parties, and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon.''

''Section 405.—(Section 53, Act No. 17 of 1930, p. 172.)—A holder in due course is a holder who has taken the instrument under the following conditions:

"1. That it is complete and regular upon its face;

"2. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

"3. That he took it in good faith and for value;

"4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

In the opinion rendered by the lower court in support of its judgment, the findings of fact and conclusions of law made by it from a consideration of the evidence are fully set forth as follows:

"The second defense of the defendant is that, as the note had been secured by a crop lien, such note could not validly be indorsed to the plaintiff without an assignment of the crop-loan contract whereby its payment was secured. Such defense is entirely without merit. It amounts to claiming that a credit can not be assigned unless rights subsidiary thereto are expressly transferred. Section 1418 of the Civil Code, 1930 ed., provides that the sale or assignment of a credit includes that of all the accessory rights, and in *Crédito y Ahorro Ponceño* v. *Gorbia*, 25 F. (2d) 817, it was held that a promissory note secured by a crop lien could be validly assigned without expressly assigning the crop-loan contract.

"The defendant further alleges by way of defense that the trustee of the United Porto Rican Sugar Company (of Porto Rico) rescinded the sublease contract by virtue of which the defendant had the possession of the land planted and of the cane for the cultivation of which the United Porto Rican Bank had granted advances, and that upon the loss of his canes by the defendant the United Porto Rican Bank discontinued its advances on the crop loan. Assuming that the relations between the United Porto Rican Sugar Company (of Porto Rico) and the United Porto Rican Bank were such that the conduct of the former prejudiced or bound the latter, and even assuming that the defendant could plead as against the plaintiff herein any defense that he might set up against the United Porto Rican Bank, no defense was pleaded showing that there was no justification for the rescission of said sublease contract, and the evidence, on the contrary, proves that the rescission was brought about by acts of nonperformance on the part of the defendant.

"The defendant, however, can not set up against the plaintiff the defenses, if any, available to him as against the United Porto Rican Bank. As already stated by us, this is a case of a negotiable note. Section 410 of the Code of Commerce provides that a holder in due course of a negotiable instrument holds the same free from defenses available to prior holders thereof. Section 411 provides that a holder who derives his title through a holder in due course and who is not himself a party to any fraud or illegality affecting the instrument has all the rights of such former holder. Therefore, if the plaintiff, or any of the former holders of the note, save the United Porto Rican Bank, is or was a holder in due course, any defenses available to the defendant as against the United Porto Rican Bank can not prosper.

"According to section 405 of the Code of Commerce a holder in due course is a holder who has taken the instrument before it was overdue, in good faith and for value, without notice of any infirmity in the same or defect in the title of the person negotiating it and provided the instrument is complete and regular upon its face. In the case at bar, the instrument is complete and regular upon its face. The evidence fails to show whether the first negotiation to The National City Bank of New York took place before or after the note matured, and in the absence of such proof it must be presumed, under the express provisions of section 398, that it was negotiated before maturity. It must also be presumed, pursuant to section 377, that The National City Bank of New York became its owner for value, and it appears from the evidence that it was assigned to it as a lien and, under section 380 of said statute, this constitutes a valuable consideration. As to the good faith and want of notice of any defect or defense, the evidence shows that The National City Bank of New York became the holder of the note, together with many others, in the regular course of business, and there is nothing to show that either said bank or any of the subsequent holders of the instrument had notice of any defect or defense, apart from the fact that the defendant failed to allege that either the plaintiff or any of the former holders thereof, except the United Porto Rican Bank, had any notice of the defenses pleaded, some of which are based on facts which occurred after the maturity of the note, that is, after the note had been assigned for the first time to The National City Bank of New York. It is, therefore, evident that although the plaintiff is not a holder in due course, inasmuch as it bought the note after its maturity, it has all the

rights of a holder in due course, since its predecessor in title, that is, The National City Bank of New York, was a holder in due course. Consequently, even though the defendant might allege special defenses against the United Porto Rican Bank, he can not set them up against the plaintiff."

The main contention of the appellant is that the note is subject to the crop-loan contract to which it refers and that the plaintiff is not a holder in due course of the note because the same is held as a pledge by The National City Bank. As to the latter point, it appears from the evidence that although said bank received the same in pledge, the plaintiff bought it, with others, on February 25, 1938, at an auction sale held in the District Court of the United States for Puerto Rico, in equity case No. 2287 brought by the Caguas Company, Inc., against The United Porto Rican Bank. That is the reason why, by leave of the lower court, the complaint was amended to conform to the proof so as to allege that the plaintiff was the holder but not the owner of the note at the time of bringing the present action in 1935. What appears from the testimony of Rafael García Cabrera, manager of The National City Bank, Caguas branch, is that said bank. held the note in pledge but that at the time of the trial of this case in 1939 the note was in the hands of counsel for the plaintiff and that it was sent to the bank so as to let defendant's counsel examine it.

As to the contention that the note is not enforcible because the same is subject to the crop-loan contract, the law and the authorities are to the contrary. Section 1418 of the Civil Code (1930 ed.) provides that "the sale or assignment of a credit includes that of all the accessory rights, such as the security, mortgage, pledge, or privilege." On the note itself it was stated as follows:

". . . . The present promissory note is one of several referred to in the crop-loan contract executed by the Bank and the undersigned parties on December 16, 1930, before Notary Joaquín Vendrell, according to affidavit No. 7446, duly registered and, together

with other notes made or that might be made in the future in accordance with said contract, is secured by the lien created thereby. *Nothing contained in the present note shall be construed as to limit in any way the absolute obligation of the undersigned parties or of each of them to pay the present note on the date of its maturity or on the date of maturity of any extension thereof.*"

In *Crédito & Ahorro Ponceño* v. *Gorbia*, 25 F. (2d) 817, in which section 1418, *supra*, was construed, it was held that if the promissory notes of some colonos were secured by the tobacco the object of a crop-loan contract, the possession of said tobacco passed to the bank upon the transfer to it of the notes.

■ Moreover, although the crop lien had been canceled, such cancellation would not have carried with it the cancellation of the debt secured, as was held in *Caguas Company, Inc.* v. *Mombille*, *supra*, where it was said:

"The cancellation of a guaranty does not imply the cancellation of the debt thus guaranteed. The creditor may at any moment part with the property which guarantees his credit without losing the latter."

Furthermore, from the very terms of the note we have already seen that the defendant promised to pay the same at maturity without any limitation whatsoever.

■ It is true that the plaintiff, at the time of acquiring the note which had already matured, was not a holder in due course. The lower court, however, applied correctly Section 411 of the Code of Commerce which provides as follows:

"Section 411.—(Section 59, Act No. 17, 1930, p. .172.)—In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were non-negotiable. *But a holder who derives his title through a holder in due course, and who is not himself a party to any fraud or illegality affecting the instrument, has all the rights of such former holder in respect of all parties prior to the latter.*" (Italics ours.)

Sections 410 and 411, *supra* (Sections 58 and 59 of the Uniform Negotiable Instruments Act), have been liberally

construed by the American courts: In 8 Am. Jur. 116, the rule is stated thus:

"The rule protecting one holding through a holder in due course as himself a holder in due course is applicable although he has not given value for the instrument, as where it has been transferred to him for purpose of suit in the state. It is applicable although he had notice or knowledge of infirmities in the paper. The weight of authority is that the rule is applicable where he obtains it after maturity, . . ."

In applying this rule, in the case of *Eames* v. *Crosier*, 101 Cal. 260, 35 P. 873, it was said:

". . . . . It is a settled principle that if the party who transferred the instrument to the holder took the note for value, and before maturity, unaffected by any infirmity in it, the holder acquired as good a title, *although he took the note when overdue.*"

See also the annotation in 98 A.L.R. 291.

We are of the opinion that the other errors assigned, which relate to the weighing of the evidence by the lower court, are without merit, in the absence of any charge of passion, prejudice or partiality, for its findings are sustained by the evidence introduced. It was proved that the defendant executed the promissory note which appears *prima facie* to be negotiable; that the same was indorsed in blank; that the plaintiff was the holder thereof at the time of bringing the action and, subsequently, its owner; and that the same has not been paid by the defendant.

As to the award of $500 as attorney's fees, it is our opinion that, in view of all the attendant circumstances, we must not interfere with the discretion of the lower court in considering the obstinacy of the defendant.

The judgment appealed from is affirmed.